IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMAL ALBERT JENKINS,

    Plaintiff,                No. CIV S-05-358 LKK KJM P

    vs.

BARTLEY,

    Defendants.           FINDINGS & RECOMMENDATIONS

_____/

       Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983, alleging that defendant Riley denied him access to the law library from February through June 2004, while he was a pretrial detainee at Sacramento County Jail, and that defendant Bartley removed materials from a letter plaintiff mailed to his mother. Defendants have moved for summary judgment.

I. Summary Judgment Standards Under Rule 56

       Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

/////

1

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On May 7, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

/////

II. Access To The Court

In his amended complaint, plaintiff alleges that his First Amendment right of access to the courts was violated when he was unable to go the jail's law library. Defendant Riley argues that this cause of action is barred by Heck v. Humphrey, that plaintiff is unable to show actual injury, and that she is entitled to qualified immunity.

 A. Facts

Plaintiff was arrested in January 2004 and booked into Sacramento County Jail, where he remained through his conviction in October 2006. Deposition of Jamal Jenkins (Jenkins Depo.) at 9:23-10:1, 12:1-3.[1] Plaintiff was represented initially by Deputy Public Defender Paula Weikel, but in February 2004, he retained Charles Bloodgood. Id. at 19:2-3 & 21-23, 20:16, 21:16. Petitioner was not satisfied with either lawyer's performance and so sought access to the law library beginning in February and continuing through June 2004. Amended Complaint (Am. Compl.)[2] at 3-4; Opposition (Opp'n), Ex. B at 8-9 (plaintiff's requests for law library access). In May 2004, he discharged Attorney Bloodgood. Jenkins Depo. at 20:23-24. Plaintiff proceeded pro se from September through December 2004 and thereafter was represented by Attorney Miller and Attorney Bowman. Id. at 23:10-12, 24:18-22. He did not represent himself during the period of time he alleges that defendant Riley denied him access to the law library. Id. at 22:23-23:4. Jail policies provided that inmates with pro se status were given priority access to the law library. Opp'n, Ex. B at 1-2 (Riley's response to request for admissions no. 8) & 3 (jail policy).

/////

---

[1] Defendants have attempted to authenticate portions of the deposition through the declaration of counsel; this is improper. Orr v. Bank of America, NT & SA, 285 F.3d 764, 774 (9th Cir. 2002) (requirements for authenticating a portion of a deposition). However, defendants have lodged the deposition transcript, properly certified, to which the court refers.

[2] Although this pleading was not signed under the penalty of perjury or otherwise verified, defendants rely on its averments in their statement of undisputed facts.

Plaintiff asserts that had he been given access to the law library during this critical phase of the prosecution against him, he could have "read law documents that would have allowed me to represent myself," prepared habeas petitions and obtained a better outcome. Jenkins Depo. at 15:5-8, 16:23-17:20.

Plaintiff was convicted on October 5, 2006. At the time his deposition was taken and the motion for summary judgment was filed, his appeal of the conviction was pending. Jenkins Depo. at 12:3-6, 13:11-13; Motion For Summary Judgment, [First] Request For Judicial Notice. On May 13, 2008, the Court of Appeal for the Third Appellate District affirmed plaintiff's conviction but directed the Superior Court to correct the minute order concerning plaintiff's sentence. See Second Request for Judicial Notice (opinion in People v. Jenkins, C051852).

B. Access To The Court and Heck v. Humphrey

In Heck v. Humphrey, the United States Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. 477, 486-87 (1994). In Heck, the plaintiff did not allege he was denied access to the courts but rather claimed that state prosecutors and police had destroyed evidence. Id. at 478-79.

In contrast, plaintiff's claims in this case do not directly implicate his conviction; instead, he argues that his First Amendment right of access to the court was abridged when he was denied law library access and so was unable to research and understand his right to proceed in pro per and to take other actions to challenge and supplement the perceived inadequacies of counsel's performance.

Although an inmate has a constitutionally protected right of meaningful access to the courts, there is no freestanding constitutional right to law library access for prisoners. Bounds v. Smith, 430 U.S. 817, 820-21 (1977); see Lewis v. Casey, 518 U.S. 343, 350-51 (1996). Instead, law library access serves as one means of ensuring the constitutional right of access to the courts. See id. at 351. A prisoner claiming that his right of access to the courts has been violated due to inadequate library access must show that: 1) access was so limited as to be unreasonable, and 2) the inadequate access caused actual injury. Vandelft v. Moses, 31 F.3d 794, 797 (9th Cir. 1994). A prisoner cannot make conclusory declarations of injury, but instead must demonstrate that a non-frivolous legal claim has been frustrated or impeded. It is not enough for an inmate to show some sort of denial: he must also show "actual injury" from the denial or delay of services. The Supreme Court has described the actual injury requirement:

> [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Lewis, 518 U.S. at 351.

/////

/////

/////

6

Two cases from the Seventh Circuit have discussed the interplay between <u>Heck</u> and access to the court.[3] In <u>Nance v. Vieregge</u>, 147 F.3d 589 (7th Cir. 1998), the inmate plaintiff was to be transferred from one prison to another, which was closer to the court that was going to hear his motion to withdraw his guilty plea. The property clerk told plaintiff he could not take his legal documents, which included "photocopies of cases Nance wanted to have handy when arguing in support of his motion. . . ." <u>Id</u>. at 590. The warden assured plaintiff that his legal materials would follow him. They did not and plaintiff eventually filed suit. The court observed:

> If the injury in question is losing the underlying case, then *Heck* . . . comes into play. . . . Nance pleaded guilty; his motion to withdraw the plea was denied; and although the prison's unconstitutional hindrance of his efforts to withdraw the plea (if that is what occurred) would be a good ground for a new hearing on the motion to set aside the plea, it would not establish that Nance is entitled to damages for wrongful incarceration–not unless he went to trial and was acquitted, or the invalidity of his incarceration was established in some other fashion. The holding of *Lewis* that a claim based on deprivation of access to the courts requires proof of concrete injury, combined with the holding of *Heck*, means that a prisoner in Nance's position must have the judgment annulled before damages are available for wrongful imprisonment.

<u>Id</u>. at 591.

A slightly different situation gave rise to the decision in <u>Hoard v. Reddy</u>, 175 F.3d 531 (7th Cir. 1999). In that case, plaintiff sought damages from various county officials, alleging they hindered his ability to litigate a state habeas action. <u>Id</u>. at 532. The Court of Appeals upheld the district court's dismissal of the action and ruminated about the intersection of <u>Heck</u> and <u>Lewis</u>:

> To get damages you must prove you lost something of monetizable value; but this is not required for an injunction–indeed, the inadequacy of one's damages remedy is normally a prerequisite to injunctive relief. If a prisoner whose access to the courts is being blocked in violation of the Constitution cannot prove that, had it not been for the blockage, he would have won his case or at least settled it for more than $0 (the point emphasized in *Lewis*), he

---

[3] The cases cited by defendant are not apposite, for they concern suits attacking some part of the criminal proceedings directly rather than through the lens of an access to courts claim.

7

>  cannot get damages but he can get an injunction.  In a case such as *Heck*, where the prisoner is complaining about being hindered in his efforts to get his conviction set aside, the hindrance is of no consequence if the conviction was valid, and so he cannot get damages until the conviction is invalidated.  But suppose that he is complaining instead about being hindered in his efforts to rectify illegal prison conditions.  Since it is well known . . . that colorable claims have a settlement value, the prisoner may be able to show that had he not been hindered in prosecuting his claim he might have gotten some money for it, even if it wasn't a sure winner.  He has to show that the claim was colorable and so had some value in the litigation market but he does not have to establish the validity (as distinct from the colorableness) of the claim as a precondition to obtaining damages.  In the setting of *Heck*, there is nothing corresponding to a colorable claim; either the conviction was invalid, in which case the defendant suffered a legally cognizable harm, or it is not and he did not.

Id. at 533-34; but see Lueck v. Wathen, 262 F.Supp.2d 690 (N.D. Tex 2003) (not resolving Heck question when officials seized documents that prevented plaintiff from filing a habeas petition).

In this case, unlike Nance and Hoard, plaintiff alleges he was stymied in his efforts to challenge aspects of the then-pending prosecution and his lawyer's performance and to assert his right of self-representation.  Despite these differences, the court finds that Heck applies and bars the claim, for reasons explained below.

In Valdez v. Rosenbaum, 302 F.3d 1039 (9th Cir. 2002), the plaintiff alleged that while he was a federal pretrial detainee held by arrangement in a state facility, jail officials and the Assistant United States Attorney prosecuting him restricted his access to the telephone for several weeks to prevent him from warning his confederates in a drug conspiracy that an indictment had been filed against them.  During this restriction, plaintiff was allowed to have a daily telephone call with his lawyer, but had to submit a written request to do so.  Id. at 1042.  After his conviction, he filed a civil rights action, alleging "the requirement that he obtain permission to telephone his attorney made it practically impossible to have a telephone conversation with his attorney," and claiming a Sixth Amendment violation.  Id. at 1049.  The Ninth Circuit refused to consider the claim, finding it Heck-barred because it would necessarily imply the invalidity of his later conviction.  Id.

8

1 Although Valdez challenged the telephone restriction on Sixth Amendment
2 grounds, the logic applies to plaintiff's access-to-the-courts claim, as recognized by Nance and
3 Hoard. Here, plaintiff claims he was not able to pursue habeas actions related to the pending
4 criminal proceedings or assert his right to proceed pro se in the criminal case against him. If this
5 court were to find that plaintiff was prevented from asserting his Faretta[4] right to self-
6 representation or to challenge some phase of the prosecution through a pretrial habeas petition,
7 that finding would necessarily imply the invalidity of the underlying conviction. Defendant is
8 entitled to summary judgment. See Sheldon v. Hundley, 83 F.3d 231, 234 (8th Cir. 1996) (when
9 First Amendment claims are "so entangled with the propriety of the disciplinary result," they are
10 barred by Heck).

   C.  Actual Injury

12 Defendant Riley also asserts plaintiff cannot show injury in fact from the library
13 restrictions because he was represented by counsel during the relevant time period. As the
14 Supreme Court recognized in Lewis, 518 U.S. at 351, "actual injury" is a constitutional
15 prerequisite to establishing a claim based on the denial of access to the courts. Plaintiff counters
16 that counsel's ineffectiveness undercuts defendant's argument.

17 In Bounds, 430 U.S. at 830-31, the Supreme Court recognized that correctional
18 officials may provide inmates access to law libraries or to people trained in the law as a means of
19 satisfying the inmates' right of access to the courts. Accordingly, the appointment of counsel or
20 the provision of access to retained counsel may be a means of satisfying the state's obligation to
21 provide access to the courts. Wilson v. Blankenship, 163 F.3d 1284, 1291 (11th Cir. 1998) (no
22 injury in fact when plaintiff was represented by appointed counsel in criminal proceedings);
23 Ching v. Lewis, 895 F.2d 608 (9th Cir. 1990) (right of access to the court includes right to
24 contact attorney); Davis v. Milwaukee County, 225 F.Supp.2d 967 (E.D. Wis. 2002) (no injury

---

[4] Faretta v. California, 422 U.S. 806 (1975).

9

from inadequate law library when plaintiff had lawyer in criminal proceedings).

Plaintiff argues, however, that his retained counsel's ineffectiveness means that counsel's representation could not substitute for plaintiff's own access to the law library. Opp'n at 10. The Second Circuit has rejected this argument.

In <u>Bourdon v. Loughren</u>, 386 F.3d 88 (2d Cir. 2004), the plaintiff argued he was denied access to the courts in connection with pending criminal charges when the defendants refused to provide him with materials he requested, particularly materials that would have allowed him to prepare a motion to dismiss the charges and a motion to discharge counsel. He further argued that counsel was ineffective and so could not satisfy the state's obligation to provide him with access to the courts.

The Court of Appeals rejected plaintiff's argument. It found that the standard of attorney effectiveness was not coextensive with the <u>Bounds</u> standard of adequate assistance from those trained in the law. <u>Bourdon</u>, 386 F.3d at 96-97. The court said:

> [T]he term "adequate" modifying "assistance from persons trained in the law" does not incorporate the effectiveness inquiry pertinent to the Sixth Amendment but instead refers to the capability of qualified and trained persons–rather than legal amateurs and laypersons–to provide, in dispensing legal assistance, access to the courts. Because attorneys, by definition, are trained and qualified in legal matters, when a prisoner with appointed counsel claims that he was hindered by prison officials in his efforts to defend himself. . ., he must show that, on the facts of his case, the provision of counsel did not furnish him with the capability of bringing his challenges before the courts, not that he was denied effective representation in the court.

<u>Id</u>. at 98; <u>see also</u> <u>Schrier v. Halford</u>, 60 F.3d 1309, 1314 (8th Cir. 1995) (citations omitted).

As in <u>Bourdon</u>, plaintiff has not shown that the jail prevented him from contacting counsel or hampered his ability to pursue claims through counsel. Accordingly, he has not demonstrated injury in fact.

/////

/////

III. <u>Interference With The Mail</u>

Plaintiff contends "a lengthy legal brief chronicling police misconduct" and other materials he mailed from the jail were missing from the envelope when plaintiff's mother received it. Am. Compl. at 8-9. Defendant Bartley counters that this claim is barred by collateral estoppel and that plaintiff cannot provide any proof that defendant Bartley removed the materials from the envelope.

Prisoners have "a First Amendment right to send and receive mail." <u>Witherow v. Paff</u>, 52 F.3d 264, 265 (9th Cir.1995) (per curiam). "[T]he addressee as well as the sender of direct personal correspondence derives from the First and Fourteenth Amendments a protection against unjustified governmental interference with the intended communications." <u>Procunier v. Martinez</u>, 416 U.S. 396, 408-09 (1974), <u>overruled on other grounds</u>, <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 407 (1989).

A. <u>Facts</u>

Sacramento County Jail inmates put their outgoing mail, unsealed, in a slot in their "pod" - a grouping of cells - unsealed. Jenkins Depo. at 40:7-13. Around 8:30 p.m. on July 23, 2004, plaintiff put two envelopes addressed to his mother in the pod mailbox; although both were delivered, one had items missing when his mother received it. Jenkins Depo. at 40:15-24, 41:3-5. Among the missing documents were a statement about police misconduct that plaintiff had written and a letter from the Sheriff's Department; plaintiff hoped to use the statement as support for a habeas petition during trial. Jenkins Depo. at 44:8-12, 46:1-3 & 14-21, 75:22-76:12. Defendant Bartley processed the mail from plaintiff's pod the evening of July 23rd. Jenkins Depo. 53:20-21, 59:5.

Defendant Bartley agrees that while employed at the Sacramento County Main Jail facility, his duties included processing inmate mail on the third floor. MSJ, Declaration of Mark Bartley (Bartley Decl.) ¶ 4. He retrieved mail from the mail slots, separated it by envelope size, and put the groups into the second floor mailbox for further processing; he did not seal

inmates' mail and did not inspect the contents of the mail. Id. ¶¶ 5-6; Opp'n, Ex. C at 10 (No. 34). According to the Inmate's Handbook, after mail is inspected, "officers shall seal the letters and process them for mailing within 24 hours." Opp'n, Ex. C at 7.

Bartley did not remove any material from any inmate's mail at any time. Bartley Decl. ¶ 7.

In July 2005, petitioner filed a habeas action in Sacramento County Superior Court, No. 05F06677, alleging that in April 2005 certain materials his mother claimed to have mailed to him at the jail were not in the envelopes when he received them; that a legal brief was taken from an envelope he addressed to his mother on June 22, 2004; and that various other pieces of mail were delayed or withheld. MSJ, Ex. C at 5, 13, 15, 50.

The Superior Court denied the petition:

> Petitioner contends that jail officials opened mail and removed some website print-outs that were sent to him in two envelopes, that they removed items from another envelope that he sent. . . . Jail officials say they didn't remove anything from the envelopes. . . .
>
> Unfortunately [petitioner] cannot establish a chain of control over this mail. Similarly, he cannot establish a chain of control over his outgoing mail. . . . .
>
> In these circumstances, the court cannot provide any relief. There is no policy to evaluate, and no documents being held by jail officers. . . . .

MSJ, Ex. C at 2-3. The court did not hold a hearing on this petition. Jenkins Depo. 63:21-25. Petitioner pursued these issues, unsuccessfully, in the Court of Appeal and the California Supreme Court. Jenkins Depo. 65:5-9, 15-19.

/////
/////
/////
/////
/////

B. Collateral Estoppel

The United States Supreme Court has observed:

> A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies. Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.

Montana v. United States, 440 U.S. 147, 153 (1979) (internal citations and quotations omitted). The doctrines of collateral estoppel and res judicata apply in civil rights actions under 42 U.S.C. § 1983 when the constitutional claim is based on the same alleged act or omission that was the subject of a state court action, and when the state courts would give preclusive effect to its judgment. Allen v. McCurry, 449 U.S. 90, 104-05 (1980); Migra v. Warren City School District Board, 465 U.S. 75, 81 (1984); Valley Wood Preserving, Inc. v. Paul, 785 F.2d 751, 753 (9th Cir. 1986). A judgment in a state habeas action may preclude further litigation of issues in a federal civil rights action. Sperl v. Deukmejian, 642 F.2d 1154, 1155 (9th Cir. 1981); Silverton v. Department Of The Treasury, 644 F.2d 1341, 1346-47 (9th Cir. 1981); see also Harris v. Jacobs, 621 F.2d 341, 343-44 (9th Cir. 1980) (state habeas determination that the prison had provided constitutionally adequate medical care barred his § 1983 action on the same ground, but did not preclude his Fourteenth Amendment claim of entitlement to consult outside doctor).

> In California, collateral estoppel has been found to bar relitigation of an issue decided at a previous proceeding if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior [proceeding].

People v. Sims, 32 Cal.3d 468, 484 (1982), superseded on other grounds by statute, Cal. Vehicle

1  Code § 13353.2 (internal quotation omitted); see also Maldonado v. Harris, 370 F.3d 945, 952
2  (9th Cir. 2004), cert. denied sub nom. Kempton v. Maldonado, 544 U.S. 968 (2005) (discussing
3  California's "primary rights" doctrine of claim preclusion).
4        There is no dispute that plaintiff was the petitioner in the state habeas proceedings
5  or that the action proceeded to a final judgment; in his deposition, plaintiff acknowledged that the
6  California Supreme Court denied relief on this claim. Jenkins Depo. at 65:15-19. There is a
7  slight discrepancy regarding the date plaintiff put the letter in the pod mailbox: in the amended
8  complaint, plaintiff alleges it was on July 23, 2004, while in the state habeas petition, he claims it
9  was on June 22, 2004. Am. Compl. at 8; MSJ, Ex. C at 13. However, in an attachment to the
10 state habeas petition, plaintiff describes the contents of the letter to his mother as including a
11 statement about police misconduct, a complaint to the Citrus Heights police department, a letter
12 from the Internal Affairs Department of the Sheriff's office and a letter from the Sacramento
13 County Law Library. MSJ, Ex. C at 51. In his deposition, he described the documents in the
14 letter at issue in this case as including a statement chronicling police harassment, a letter from the
15 Sacramento County Law Library, a letter from the Citrus Heights Police Department, and a letter
16 from the Sacramento County Sheriff's Department. Jenkins Depo. at 45:11-18; 46:14-21. The
17 court finds that the issue raised in the instant complaint was included in the issues presented in
18 the state habeas proceedings.
19       Plaintiff argues that the state proceedings should not be given preclusive effect
20 because he never received a hearing on the petition challenging the loss and delay of his mail.
21 Opp'n at 15. However, the issue raised here was "actually litigated" in the state habeas action
22 because it was "*properly raised*, by the pleadings or otherwise, and [was] submitted for
23 determination, and [was] *determined*. . . . A determination may be based on a *failure of*
24 *proof*. . . ." Sims, 32 Cal.3d at 484 (emphases in original; internal quotations, citations omitted).
25 In this case, too, the Superior Court determined the issues raised in plaintiff's habeas action
26 based on a failure of proof that anyone in the jail had tampered with plaintiff's mail.

1    Accordingly, because California would give the habeas determination preclusive
effect, plaintiff's civil rights action based on mail tampering is similarly barred.

C.  Other Matters

Plaintiff argues that defendant Bartley's declaration should be rejected because of Bartley's general animus against inmates and because of the jail manual, which requires that mail be sealed within twenty-four hours of inspection.

Even if plaintiff's claim that Bartley disliked inmates could potentially preclude summary judgment, it is based on an unsworn letter from inmate Norman Whitehorn, who claims that Bartley handled him roughly. Opp'n, Ex. C at 15. The court will not consider this letter. See United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003). Nor do the contents of the jail handbook preclude summary judgment: the handbook says nothing about who is responsible for sealing the mail and so does not create a disputed issue of material fact.

IT IS THEREFORE RECOMMENDED that defendants' motion for summary judgment be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 28, 2008.

_____
U.S. MAGISTRATE JUDGE

2/jenk0358.msj